**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JAMES C. BULLOCK, JAMES UMBENHAUR, CHARLES VOORHIES and RICKEY WARD, | : : : : | **Hon. Dennis M. Cavanaugh** |
| Plaintiffs, | : : | **OPINION** |
| v. | : : | Civil Action No.: 02-2758 (DMC) |
| RICHARD DRESSEL, and INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION 164, | : : : : : | |
| Defendants. | | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Richard Dressel, the International Brotherhood of Electrical Workers ("IBEW") and Local Union 164 ("Local 164"), (collectively, "Defendants") for partial summary judgment and dismissal of supplemental state law claims of the Complaint filed by James Bullock, James Umbenhaur, Charles Voorhies and Rickey Ward (collectively "Plaintiffs"). No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' motion for partial summary judgment is **denied**.

**PROCEDURAL BACKGROUND**

On January 24, 2005, this Court granted Defendants' original motion for summary judgment as to all five causes of action in Plaintiff's Complaint. Count One alleges a violation

of Section 101(a)(5) based upon Defendants' alleged refusal to refer Plaintiffs to jobs; Count Two alleges that Defendants' alleged refusal to refer Plaintiffs to jobs was discriminatory and constitutes a breach of the duty of fair representation, and; Counts Three, Four and Five allege claims of defamation.

Plaintiffs appealed this Court's decision to the Third Circuit. On appeal, the Third Circuit affirmed this Court's dismissal of Count One of Plaintiff's Complaint and reversed this Court's statute of limitations dismissal of Count Two of Plaintiff's Complaint. Counts Three Four and Five are likewise reinstated because this Court now has original jurisdiction over the claim in Count Two and supplemental jurisdiction over the state defamation claims of Counts Three, Four and Five.

## FACTUAL BACKGROUND

Plaintiffs belong to the IBEW and work as traveling electricians. Traveling electricians commonly leave the geographical jurisdiction of their local IBEW unions in search of work in geographical areas operated by other IBEW unions. In 2001, Plaintiffs arrived in the jurisdiction of the Local Union, which has its offices in Paramus, New Jersey. Local 164 was a party to a collective bargaining agreement between the Hudson/Bergen/Essex Division of the Northern New Jersey Chapter, Inc., of the National Electrical Contractors Association. The collective bargaining agreement was effective from December 27, 1999, through May 31, 2003.

Local 164 maintains what is known as a "hiring hall" for electricians. Traveling electricians are required to seek employment through local IBEW hiring halls. It is common for members of a local union to seek work through IBEW local union hiring halls in jurisdictions where work is plentiful. The Local 164 hiring hall offers jobs to applicants for employment as

they become available.  The order by which jobs are offered is determined as set forth in the

collective bargaining agreement.  The first jobs are offered to "Group I" applicants which is

limited to those electricians residing in the geographical jurisdiction of Local 164.  Next, jobs are

offered to Group II applicants which is made up of electricians residing outside the jurisdiction of

Local 164 and includes traveling electricians like Plaintiffs.  Jobs are next offered to Group III

applicants who are usually less experienced electricians residing in the geographic jurisdiction of

Local 164.  Finally, jobs are offered to Group IV applicants which consists of the least

experienced electricians.  Applicants must be physically present in the hiring hall to receive a job

offer.

     Through Local 164's hiring hall, Plaintiffs obtained employment with Guzzo Electric and

were dispatched to a job at Newark Liberty Airport in March, 2001.  On June 5, 2001, Plaintiffs

and approximately thirty other traveling electricians signed a letter (the "Rossa letter") addressed

to Lawrence Rossa, an IBEW Vice President.  The Rossa letter complained about late benefit

payments and late payment of total pay on payday.  (Giblin Cert., Exh. G).

     Rossa forwarded a copy of the letter to Richard Dressel, the business manager of Local

164 responsible for the daily operation of the union.  In response to the Rossa letter, Dressel sent

a letter dated June 7, 2001 (the "Dressel letter") to the business managers of the local unions

where the travelers who had signed the Rossa letter were members.  Dressel wrote the following:

> the []actions [of these travelers] have now forced me to suspend
> the referral of ALL traveling Brothers of the IBEW for at least a
> one month period.  It is unfortunate that other travelers will have to
> be [a]ffected by this.  It is also unfortunate that several projects will
> go under-manned.  I will not allow this situation to get out of hand
> whereby a few trouble makers are attempting to have the 'tail wag
> the dog'.  Once the referral of travelers resume, they will also not

> be able to select their own jobs.  See what happens when you try to be a nice guy?  They will get referred to where I need them, and that's it.
>
> Please do me a favor.  Keep your problem members at home and deal with them.  These 'Brothers' are not welcome here.

(Giblin Cert., Exh. H)

Defendants claim that referrals for traveling electricians were never suspended because Dressel never acted on his threat to do so.  Plaintiffs dispute that assertion and say that the very small number of Group II traveler referrals from June 7, 2001 until approximately one month later indicates that Local 164 did indeed suspend Group II traveler referrals.

Plaintiffs filed their Complaint on June 7, 2002, and allege in Count Two that Defendants violated the duty of fair representation by allegedly refusing to refer traveling electricians for jobs during the month following the Dressel letter.

## DISCUSSION

### Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavit, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir. 1987).  The Supreme Court has stated that in applying the criteria for granting summary judgment to a defendant:

> [t]he judge must ask .. . not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented.  The mere existence of a scintilla of evidence in support

> of the [non-movant's] position will be insufficient; there must be
> evidence on which the jury could reasonably find for the [non-
> moving party].  The judge's inquiry therefore, unavoidably asks
> whether reasonable jurors could find by a preponderance of the
> evidence that the [non-movant] is entitled to a verdict.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

A fact is "material" only if it will affect the outcome of a lawsuit under the applicable

law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable fact

finder could return a verdict for the nonmoving party.  Id.

In deciding a motion for summary judgment a court must view the facts in the light most

favorable to the nonmoving party and must resolve any reasonable doubt as to the existence of a

genuine issue of material fact against the moving party.  Continental Ins. Co. v.  Bodie, 682 F.2d

436, 438 (3d Cir. 1982).  The burden of showing that no genuine issue of material fact exists

rests initially on the moving party.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A

litigant may discharge this burden by exposing "the absence of evidence to support the

nonmoving party's case."  Id. at 325.  However, this effort requires more than "simply show[ing]

that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co. Ltd. 475

U.S. at 586.  The Court's role is not to "weigh the evidence and determine the truth of the matter,

but to determine whether there is a genuine of fact for trial."  Anderson, 477 U.S. at 248-49.

In order to survive a motion for summary judgment, the nonmoving party must present

"more than a mere scintilla of evidence" in his favor.  The nonmovant "cannot simply reallege

factually unsupported allegations contained in his pleadings."  Id. at 249.  If, for example, the

nonmovant submits an affidavit to support his opposition to the summary judgment motion,

Federal Rule of Civil Procedure 56(e) requires that such affidavit be based on "personal

knowledge" and "show affirmatively that the affiant is competent to testify in all matters stated therein."  Williams v. Borough of West Chester, Pa., 891 F.2d 458, 470 (3d Cir. 1989).

Count Two of Plaintiffs' Complaint

The duty of fair representation is a creation of the federal judiciary.  In Steele v. Louisville & Nashville Railway Co., 323 U.S. 192 (1944), the Supreme Court held that a union's acceptance of authority under the Railway Labor Act, as the exclusive representative of bargaining unit employees carried with it a correlative duty to exercise its authority fairly.  The Supreme Court stated, in collective bargaining the making of contracts, that the union was required to represent non-union and minority union members "without hostile discrimination, fairly, impartially and in good faith."  In Ford Motor Company v. Huffman, 345 U.S. 330 (1953), the Supreme Court extended those principles to the National Labor Relations Act ("NLRA"), holding that union's authority as the exclusive bargaining representative gives rise to a duty to represent all unit employees fairly:

> [The NLRA's] statutory obligation to represent all members of an appropriate [bargaining unit] requires [unions] to make an honest effort to serve the interests of all of those members without hostility."

Id. at 337.

In Breininger v. Sheet Metal Workers Int'l Assoc. Local Union No. 6 493 U.S. 67 (1989), the Supreme Court expanded the application of these principles to hiring halls finding that "[when] it operates an exclusive hiring hall], the union is administering a provision of the contract, something that we have always held is subject to the duty of fair representation."  Thus, there is no dispute that the NLRA applies to the union's administration of an exclusive hiring

hall and a duty of fair representation attaches to it.

When confronted with allegations of a discriminatory hiring hall, courts apply the framework embodied in <u>N.L.R.B. v. Wright Line</u>, 662 F.2d 899 (1st Cir. 1981). Under this framework, a plaintiff bears the initial burden of showing by a preponderance of the evidence, that discriminatory animus was a "substantial or motivating factor" in an adverse job referral decision. <u>Id.</u> The term "motivating factor" means that if the union were asked at the moment of the job referral decision what is reasons were and, if it gave a truthful response, one of those reasons would be an improper discriminatory purpose. <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 250 (1989).

If a plaintiff satisfies this burden, the union can show, as an affirmative defense, that the plaintiff would not have been referred to a particular job in any event. <u>Id.</u> The United States Court of Appeals for the First Circuit described the analysis in the context as follows:

> [i]f the [refusal to refer] would have occurred absent the protected activity, it is clear no unfair practice existed since a bad motive without effect is no more an unfair labor practice than an unexecuted evil intent is a crime. Proof that the refusal to refer would have occurred in any event and for valid reasons amount[s] to an affirmative defense on which the [union] carrie[s] the burden of proof by a preponderance of the evidence. The defense requires the union to establish that it acted pursuant to a concrete standard - be it a collectively bargained provision, a written union rule, or long-standing practice.

<u>Wright Line</u>, 662 F.2d at 904.

Defendants argue that Plaintiffs have failed to satisfy their burden of proof because they cannot demonstrate that discriminatory animus was a substantial or motivating factor in any job referral decision made by Local 164. Defendants contend that the Dressel letter is insufficient

because there is no evidence showing that the decision to suspend traveling electrician referrals was ever effectuated.  To support this contention, Defendants include deposition testimony from Dressel and others holding management positions with Local 164 indicating that they never intended to act on the threats made by Dressel in his letter of June 7, 2001.  (Giblin Cert., Exhs. B and I).  In support of their contention that no referrals were withheld from the travelers, Defendants cite to the hiring hall records.  Defendants argue that the records from June 2001, to July 2001, show that Group I applicants accepted all of the job referrals offered to them by the Local 164, leaving none for the Group II traveling applicants.  (Giblin Cert, Exh. J).

Defendants state that Plaintiffs must come forward with more than "their own speculation and conjecture about the administration of the hiring hall" in order to survive Defendants' motion for summary judgment.  (Def. Br. at 20).

Plaintiffs, however, argue that the hiring record to which Defendants refer are not relevant without any manpower call lists, which track the actual number of electricians requested by employers on any given day from the Local 164 hiring hall.  Without the number of available job requests from outside contractors, Plaintiffs argue, there is no baseline to verify Defendants' assurances that all available jobs were accepted by Group I electricians.

In response, Defendants explain that the baseline that Plaintiffs seek has been provided by the certifications from the employers or contractors who made the manpower requests to Local 164 during the relevant period of time. (Giblin Cert. of March 30, 2007, Exh. A):

> [D]uring the time period of March 1, 2001 to September 31, 2001,
> the Company requested manpower on different occasions from
> International Brotherhood of Electrical Workers, Local No. 164 in
> accordance with the terms and conditions of the collective
> bargaining agreement that existed between us at the time.

> All requests for manpower were satisfied by the Local Union in
> accordance with the collective bargaining agreement. At no time
> did the Local Union withhold manpower from the Company or fail
> to fill all of our manpower needs on a prompt and timely basis.
> Further, the Company never had occasion to complain that the
> Local Union was improperly withholding manpower because all
> requests were properly filled.

(Giblin Cert. of March 30, 2007, Exh. A, ¶¶ 2 and 3).

In light of the statements of these employers, Defendants argue that the actual manpower requests are immaterial because all of the employers had their man power requests properly filled in accordance with the collective bargaining agreement. Therefore, Defendants position remains that Plaintiff has failed to create a genuine issue of material fact because the employer certifications make clear that no hiring hall violation occurred.

This Court disagrees. Plaintiffs have come forward with the Dressel letter and Defendants have conceded that there was a concomitant "absence of any Group II referrals following its publication." (Def. Br., p. 4). Plaintiffs also submit Local 164's job dispatch activity for the time period of May 1, 2001 through August 31, 2001. (Fisher Aff., Exh. 6). The job dispatch activity record reflects one-hundred fifty-three dispatches of Group II traveling electricians for the month of May 2001. A stark contrast to the nine Group II dispatches for the one-month period immediately following Dressel's letter. The record then shows another 383 Group II dispatches in July and August 2001. Id.

Add to this evidence the affidavit of Frank Gray, a Group II traveling electrician, who asserts that he had a conversation with the dispatch official of Local 64's hiring hall, John Nordyk:

> [f]ollowing a week or so of checking on the referrals at Local 164's

-9-

> out of work list, I became vaguely aware that there had been some
> sort of problem between Local 164 and some other traveling
> electricians earlier in the month.  As I was not involved, I didn't
> pay much attention to it.  However, by the end of June, I could see
> that Group II electricians were not only not getting referrals for
> short-term work, they were not getting work at all.  When I went to
> the window to ask about it, the assistant business agent there, John
> Nordyk, told me that work for all Group II electricians had been
> suspended for the month of June.

(Aff. of Frank Gray, p. 2).

This testimony contradicts Defendants' assertion that Dressel never acted on his written intention to suspend all referrals of travelers for a month.  Moreover, the testimony of affiant, Charles Richardson, a non-party traveling electrician, further clarifies that genuine issues of material fact exist.  He states that during July 2001, when referrals were being withheld, he approached Joanne Koehler, an administrative assistant of the Local 164 hiring hall, and saw she had a stack of referrals an inch thick on her desk.  When he stated, "It looks like we're going to get some work today," she stated, "No, you know what's going on here, there are not going to be any referrals for travelers out of this office for the rest of the month."  (Richardson Aff.¶ 3).  This competing testimony raises significant credibility issues for a fact-finder to consider.  Defendants have not established the absence of any genuine issues of fact.

## CONCLUSION

Based on the foregoing, Defendants' motion for partial summary judgment as to Counts Two, Three, Four and Five of Plaintiffs' Complaint is **denied.**  An appropriate Order accompanies this Opinion.

  S/ Dennis M. Cavanaugh
Hon. Dennis M. Cavanaugh, U.S.D.J.

Date:  August ___21__, 2007
Orig.:  Clerk
cc:      Counsel of Record
          The Honorable Mark Falk, U.S.M.J.

-10-